UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Richard H. Setzer, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | C.A. No. 3:13-cv-00192-MGL |
| ) | |
| Michelin Retirement Plan, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

**OPINION AND ORDER**
**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

In this matter, Plaintiff Richard H. Setzer ("Setzer") seeks a determination as to whether the Michelin Pension and Benefits Appeals Board ("Appeals Board") abused its discretion by denying his benefit claim in which he requested that he be allowed to change the Joint and Survivor (50%) form of pension benefit payment elected under the Michelin Retirement Plan ("Plan") after his retirement and the Annuity Commencement Date.

The Plan is governed by the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1001, *et seq*. (ECF Nos. 23 & 23-2.) Under Plan terms, the Appeals Board has the discretion, among other things, to interpret the Plan in its sole discretion, to determine the amount of benefits which shall be payable to any person in accordance with the provisions of the Plan, and to provide a review in the event a claim for benefits is denied. (ECF Nos. 23 at ¶ 3 & 23-2.)

On July 29, 2013, the parties filed their Joint Stipulation pursuant to the Court's Specialized Case Management Order for ERISA benefits cases. (ECF No. 9). The parties agree the Court may dispose of this matter consistent with the Joint Stipulation and memoranda in

1

support of judgment. (ECF No. 23 at ¶ 8). The parties have stipulated that Setzer has exhausted his administrative remedies as to his benefit claim under the Plan. (ECF No. 23 at ¶ 2.)

The parties filed their respective cross-memoranda in support of judgment on July 29, 2013 and July 30, 2013. (ECF Nos. 24 & 25). On August 16, 2013, the Plan filed its responsive memorandum in opposition to Setzer's memorandum in support of judgment. (ECF No. 29.) Setzer did not file a response in opposition to the Plan's memorandum in support of judgment. All memoranda rely on the administrative record filed on July 29, 2013 as Exhibit 1 to the parties Joint Stipulation. (ECF No. 23-1.)

## DECISION OF THE COURT

After reviewing the administrative record, the parties' Joint Stipulation, and parties' memoranda, the Court enters the following Findings of Fact and Conclusions of Law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure. To the extent that any findings of fact represent conclusions of law, or vice-versa, they shall be so regarded. For the reasons set forth below, the Court finds the Appeals Board did not abuse its discretion in denying Setzer's benefit claim.

### I.    FINDINGS OF FACTS

**A**.    **Setzer's Retirement From Michelin North America, Inc.**

Setzer was employed by Michelin North America, Inc. ("Michelin"). His last day of work was November 30, 2004. (AR 30.)[1] Setzer retired effective December 1, 2004. (AR 38, 40.) At the time of his retirement, Setzer was married to Jessica Setzer ("Jessica"). (AR 31.)

---

[1] Citations to the administrative record on Setzer's benefit claim will be made by the reference "AR" followed by the applicable Bates-stamped page number(s) of the record. The Administrative Record was Bates numbered consecutively pp. Michelin (000001-000045). (ECF 23-1.)

B.      **Michelin Retirement Plan**

   1.      **Setzer's Participation and Receipt of the Plan Pension Benefit**

As an employee of Michelin, Setzer was a participant in the Plan. (AR 39.) The Plan is a defined benefit pension plan that is subject to and governed by ERISA and the Internal Revenue Code. (Plan at 52-53.)[2] At the time of his retirement, Setzer had a vested Plan benefit. (AR 38-39.)

Setzer began receiving a monthly Plan pension benefit effective December 1, 2004. (AR 40.) Setzer elected to receive a Joint and Survivor Annuity form of payment of his Plan benefit. (AR 30.) By electing this form of payment, Setzer elected "to receive a reduced monthly pension payable during [his] life." (*Id*.) After his death, 50% of his reduced pension will be continued to (and during the life of) his wife, Jessica, if she survives Setzer. (*Id*.) (The survivor pension benefit payable to Jessica will be referred to as the "Surviving Spouse Benefits" herein.)

   2.      **Plan Terms**

Under Plan terms, at the time of his retirement, Setzer was a "Married Participant" meaning he was "lawfully married on the earlier of his…Annuity Commencement Date." (Plan at 63.) As applicable to this matter, the "Annuity Commencement Date" means "the first day of the first month for which an amount of Pension is payable to . . . [a] Participant or Beneficiary as an annuity . . . ." (Plan at 55.) Setzer's Annuity Commencement Date was December 1, 2004.

The Plan specifically addresses the form of payment to a Married Participant. (See AR 79-80.) Plan Section 6.2 states:

---

[2] The Plan is Exhibit 2 to the parties Joint Stipulation. (*See* ECF No. 23-2.) The Plan was Bates numbered consecutively pp. Michelin (000046-000711). Reference to the Plan will be made as "Plan at __", followed by the applicable Bates numbered page(s).

3

> Solely with respect to Married Participants, unless an optional mode of retirement Pension as provided in Section 6.5 of the Plan is duly elected by a Participant or an election is made in accordance with Paragraph (E) of this Section, such Participant's retirement Pension, shall be payable as provided in Paragraphs (A), (B), (C) or (D) hereof.

(Plan at 79.) Paragraph (A) of Section 6.2 describes the Joint and Survivor 50% Annuity form of benefit that Setzer elected. It states:

> (A) <u>Post-Retirement Joint and Survivor Benefit</u>.
>
> The mode of payment to a Married Participant whose retirement Pension benefit commences upon his retirement on a Retirement Date, as provided for in Article 3 of the Plan or an Appendix, shall be the Actuarial Equivalent of the retirement Pension provided under Section 6.1 of the Plan, payable as a reduced monthly retirement Pension for the Married Participant for life commencing on his Retirement Date with the provision that fifty percent (50%) of his reduced retirement Pension shall be continued to and during the life of his spouse, if his spouse is living at the time of his death, and terminating with the last monthly payment due prior to the spouse's death.

(Plan at 79.)

Under Paragraph (E) of Section 6.2, a Married Participant may elect to forego receipt of the Joint and Survivor benefit described in Paragraph A. Paragraph E states:

> Each Married Participant may elect during the Election Period not to receive his retirement Pension in the mode of a joint and survivor benefit described in Paragraphs (A) . . . . In the event of such an election, the Participant's retirement Pension will be payable in the regular mode of benefit described in Section 6.1 of the Plan unless an optional mode of retirement Pension as provided for in Section 6.5 of the Plan is duly elected by the Participant. Solely for purposes of this Paragraph (E), "Election Period" means the ninety (90) day period ending on the Participant's Annuity Commencement Date, determined in accordance with . . . Paragraphs (A) . . . .

(Plan at 81.) In the present matter, Setzer did not elect to forego the Joint and Survivor form of benefit. (AR 30, 38, and 40.)

4

Under the Plan, in the event a Married Participant ceases to remain married because of divorce or the death of his spouse "**prior to** the Participant's Annuity Commencement Date, the coverage [form of benefit elected] shall be canceled as of such date (subject to submission of a divorce decree or death certificate, whichever is applicable) . . . ." (Plan at 80.) (emphasis added)

The Plan's summary plan description ("SPD") advises a Participant that he must elect an option before the date his benefits begin, and that he "may change … [his] election any time before the date [his] payments start. After the first payment has been made, the option … selected may not be changed, even if [his] beneficiary dies before [him]." (ECF No. 23-1 at 26)

## C.     Setzer's Benefit Claim

After receiving his pension benefit under the Joint and Survivor (50%) annuity form of payment for approximately five and one-half years, Setzer sent the Michelin Personnel Service Center correspondence dated March 2, 2010. In that correspondence, Setzer wrote requesting

> a status change to my Pension Plan. At time of selecting the plan, I was married. Recently, I have divorced my wife, Jessica Y. Setzer, due to Adultery. I request that she receive no survivor benefits and that should I remarry at some point in the future, a new spouse beneficiary could be named. If other options are available, I would appreciate clarification of the alternatives.

(AR 19.)

By letter dated April 16, 2010, the Personnel Service Center ("PSC") responded to Setzer's March 2, 2010 correspondence informing Setzer that the beneficiary elected could not be changed after the pension payments are received. (AR 22.) The response letter also informed Setzer of his rights to appeal the determination and to participate and present additional information supporting his request. (*Id.*)

5

Setzer appealed the PSC's determination by letter dated May 18, 2010 ("Appeal Letter"). (AR 13.)  In a letter dated June 4, 2010, the Michelin Benefits Appeals Administrator, among other things, acknowledged the receipt of Setzer's appeal, provided Setzer with a copy of the 2004 Plan SPD and the relevant language concerning his benefits election, and scheduled the matter for review by the Appeals Board, informing Setzer of his right to appear before the Appeals Board and present arguments. (AR 16-17.)  The Appeals Board met on June 21, 2010 to consider Setzer's appeal and reviewed "[a]ll of the information" including the SPD. (AR 7-10.) The Appeals Board members "read that a pension option could be changed any time prior to the date the payments start.  After the first payment has been made, the option cannot be changed, even if the beneficiary dies before the retiree."  (AR 10.) The Appeals Board voted unanimously to deny Setzer's appeal.  (*Id.*)   Setzer elected not to participate in the Appeals meeting. (AR 10.)

By letter dated June 28, 2010, the Chairman of the Appeals Board informed Setzer of the Board's decision to deny his appeal based on the information before it. ("Appeal Denial").  (AR 4.)  The Appeal Denial informed Setzer of his right to bring a civil action in U.S. District Court. (*Id.*)  Approximately two years later, in a letter dated July 30, 2012, Setzer's counsel wrote the chairman of the Appeals Board indicating that he was writing in response to the June 28, 2010 Appeal Denial letter and inquiring about a second level review.  (AR 3.)  By letter dated August 13, 2012, the Michelin Benefits Appeals Administrator responded to inform counsel of Setzer's election and that Setzer was advised of his rights at the time the appeal was denied.  (AR 1.)

6

## II.     CONCLUSIONS OF LAW

A.     **Applicable Standard of Review**

In their Joint Stipulation, the parties agreed and stipulated that the Court should "employ the abuse of discretion standard of review." (ECF No. 23 at ¶ 3.) The parties' agreement and stipulation is based on the Plan language contained in Section 8 A.2 which patently confers discretionary authority upon the Appeals Board "to hear and decide all appeals of denied applications for benefits under the Plan, and the authority to interpret any provision of the Plan. . . ." (*Id*.) Moreover, the Plan SPD dated January 1, 2004 states:

> The Michelin Pension and Benefits Appeals Board has the sole discretionary authority to determine benefit eligibility and to construe Plan provisions.

(Plan SPD at 713spd.)

Based on the foregoing, the Court will review the Appeals Board's decision to deny Setzer's benefit claim under the abuse of discretion standard of review. *See Metropolitan Life Ins. Co. v. Glenn*; 554 U.S. 105, 111 (2008) and *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).

Under the abuse of discretion standard, a court will uphold a discretionary determination provided it is reasonable. *See Champion v. Black & Decker (U.S.) Inc.*, 550 F.3d 353, 359 (4th Cir. 2008) (citations omitted). A discretionary determination "'will not be disturbed if reasonable, even if the court itself would have reached a different conclusion.'" *Smith v. Cont'l Cas. Co.*, 369 F.3d 412, 417 (4th Cir.2004) (citing *Booth v. Wal-Mart Stores, Inc. Assocs. Health & Welfare Plan*, 201 F.3d 335, 341 (4th Cir.2000)). "[A] decision is reasonable if it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence." *Id.* (citing *Bernstein v. CapitalCare, Inc.*, 70 F.3d 783, 788 (4th Cir.1995)). Substantial evidence is that which "a reasoning mind would accept as sufficient to support a particular conclusion" and

which "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *LeFebre v. Westinghouse Elec. Corp.*, 747 F.2d 197, 208 (4th Cir.1984) (citation omitted).

In *Booth v. Walmart Stores, Inc.*, the Fourth Circuit set forth eight factors that a reviewing court may consider when "determining the reasonableness of a [plan administrator's] discretionary determination." *See Booth*, 201 F.3d at 342-43. Those factors include:

> (1) the language of the plan; (2) the purposes and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they support it; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decision-making process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external standard relevant to the exercise of discretion; and (8) the fiduciary's motives and any conflict of interest it may have.[3]

*Id.* (footnote omitted.) These factors remain a guide to the Court's review under the abuse of discretion standard of review. *See Champion v. Black & Decker (U.S.) Inc.*, 550 F.3d at 359; *Williams v. Metropolitan Life Ins. Co.*, 609 F.3d 622, 630 (4th Cir. 2010). Furthermore, "an assessment of the reasonableness of the administrator's decision must be based on the facts known to it at the time." *Elliott v. Sara Lee Corp.*, 190 F.3d 601, 608 (4th Cir.1999) (quoting *Sheppard & Enoch Pratt Hosp., Inc. v. Travelers Ins. Co.*, 32 F.3d 120, 125 (4th Cir.1994)). The reviewing court, therefore, may consider evidence in the administrative record, but may not consider evidence outside of the record.[4]

---

[3] The dual role of evaluating and finding a plan's clams does not necessarily constitute a conflict of interest and is one of many factors to be evaluated in determining the reasonableness of a plan's discretionary determination subject to the abuse of discretion standard. *See Champion v. Black & Decker (U.S.) Inc.,* 550 F.3d 353, 359 (4th Cir.2008).

[4] Though Setzer did not submit his Divorce Decree during the Plan's administrative process, the Plan did not object to him submitting the Divorce Decree as an Exhibit to the Joint Stipulation. (*See* ECF No. 23-4.)

B.     **The Decision to Deny Setzer's Benefit Claim**

    1.     **The Law and Plan Terms**

In his benefit claim, Setzer requests that in light of his divorce, 1) he be permitted to change the Joint and Survivor annuity (50%) form of pension benefit which he elected at the time he was married to Jessica and prior to his retirement and Annuity Commencement Date; 2) Jessica receive no Surviving Spouse Benefits if she survives him; and 3) he be allowed to name a new spouse beneficiary of his pension benefit should he remarry. (AR 19, 38.) As discussed fully below, ERISA and interpreting Fourth Circuit case law preclude Setzer's request.

Under ERISA Section 205, 29 U.S.C. §1055(a)(1), a pension plan must provide that "in the case of a vested participant who does not die before the annuity starting date, the accrued benefit payable to such participant shall be provided in the form of a qualified joint and survivor annuity . . . ." (*Id.*) ERISA defines "qualified joint and survivor annuity" to mean an annuity

> (A) for the life of the participant with a survivor annuity for the life of the spouse which is not less than 50 percent of (and is not greater than 100 percent of) the amount of the annuity which is payable during the joint lives of the participant and the spouse, and
>
> (B) which is the actuarial equivalent of a single annuity for the life of the participant.

29 U.S.C. §1055(d)(1).

In accordance with ERISA, the Plan in the present matter provides that "the mode of payment to a Married Participant whose retirement Pension commences upon his retirement on a Retirement Date" and is the actuarial equivalent of the regular pension benefit for an unmarried participant "payable as a reduced monthly retirement Pension for the Married Participant for life commencing on his Retirement Date with the provision that fifty percent (50%) of his reduced

9

retirement Pension shall be continued to and during the life of his spouse, if his spouse is living at the time of his death . . . ." (Plan at 79.)

In pertinent part, the Plan defines Married Participant as "a Participant who is lawfully married on the earlier of his or her Annuity Commencement Date, or the date of his or her death ." (Plan at 63.) Under the Plan, the Annuity Commencement Date is defined as "the first day of the first month for which an amount of Pension is payable to such Participant or Beneficiary as an annuity . . . ." (Plan at 55.) Setzer's Annuity Commencement Date was December 1, 2004, which is the same date as his retirement. (AR 40.) Setzer was married to Jessica on December 1, 2004. (AR 31.) Thus, Setzer was a Married Participant under Plan terms.

A Married Participant "may elect during the Election Period not to receive his retirement Pension in the mode of a joint and survivor benefit . . . ." (Plan at 81.) The Plan defines the "Election Period" as the ninety (90) day period ending on the Participant's Annuity Commencement Date.[5] (*Id*.) Thus, under Plan terms, Setzer could have elected (with Jessica's consent) to forgo the Joint and Survivor form of benefit payment if he had made the election to do so during the Election Period, which ended on December 1, 2004. (Plan at 81.) Setzer did not make such an election; rather, he elected the Joint and Survivor 50% annuity form of benefit, and he named his wife Jessica as his Plan beneficiary to receive the Surviving Spouse Benefits. (AR 30-31.) Moreover, under the Plan, if Setzer had divorced Jessica prior to his Annuity Commencement Date, he could have canceled the form of benefit elected. (Plan at 80; "In the event that a Married Participant ceases to remain married, due to divorce . . . prior to the Participant's Annuity Commencement Date, the coverage elected by the Participant under Section 6.2 "shall be canceled as of such date . . ..")

---

[5]That was the period in effect in 2004. However, the 90 day period was extended to 180 days under the Pension Protection Act and the change was effective for Plan years after 2006.

Setzer, however, did not divorce Jessica until more than five years after his Annuity Commencement Date. In *Hopkins v. AT&T Global Information Solutions Co.*, 105 F.3d 153 (4th Cir. 1997), the Fourth Circuit directly addressed the question of when a surviving spouse benefit vests in a participant's spouse. The Fourth Circuit concluded that under ERISA, "the Surviving Spouse Benefits vest in the spouse married to the participant on the date of retirement." *Id.* at 156. The Court went on to conclude that "[u]nless the form of benefit is properly changed prior to retirement, the participant is locked into the joint and survivor annuity upon retirement…[and] cannot change the form of benefit, even with the current spouse's consent." *Id.* at 157. Here, the vesting of the Surviving Spouse Benefits occurred on December 1, 2004, the date of Setzer's retirement and commencement of benefits. Consequently, as a matter of law, Setzer cannot change the Joint and Survivor form of benefit, even though Jessica purported to waive any claim or interest she might have in Setzer's pension benefits.

ERISA requires "[e]very employee benefit plan [to] be established and maintained pursuant to a written instrument," 29 U.S.C. § 1102(a)(1), "specify[ing] the basis on which payments are made to and from the plan," § 1102(b)(4). "The plan administrator is obliged to act 'in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of [Title I] and [Title IV] of [ERISA],' § 1104(a)(1)(D), and ERISA provides no exemption from this duty when it comes time to pay benefits." *Kennedy v. Plan Adm'r for DuPont Sav. and Inv. Plan*, 555 U.S. 285, 300 (2009). In sum, ERISA requires that the Appeals Board follow the Plan terms. Under the Plan terms and in accordance with the law, a Married Participant may not change the elected form of benefit after the Participant's Annuity Commencement Date.

In his Memorandum in Support of Judgment, Setzer maintains that the Plan wrongly denied his request in light of Jessica's refusal of the benefit and believes the Plan documents' use of the phrase "*may* not" instead of "cannot" leaves room for the Plan to authorize the change requested.  (ECF No. 25 at 3.)  Setzer also argues that the Plan's position fails to distinguish between a beneficiary who has died and a beneficiary who has refused a benefit, and therefore creates the "absurd result" of forcing a beneficiary to take benefits she does not want. (ECF No. 25 at 4.)  Setzer's arguments are simply unavailing and fail to account for the operation of the controlling law and the discretion of the Appeals Board in interpreting the Plan's governing language.  Contrary to Setzer's assertions, nothing in the Plan's terms *forces* Jessica to take the Surviving Spouse Benefits if she does not want them and the Plan is "statutorily required to distribute benefits in accordance with the documents on file."  *Boyd v. Metropolitan Life Ins. Co.*, 638 F.3d 138, 141 (4th Cir. 2011) (citing *Kennedy v. Plan Adm'r for DuPont Sav. and Inv. Plan*, 555 U.S. 285, 299-300 (2009). Further, the Fourth Circuit squarely addressed and rejected Setzer's core argument in *Boyd* by carefully considering the key language in *Kennedy* and concluding that a beneficiary who has relinquished his or her interest in certain proceeds by way of a divorce decree or otherwise, "ha[s] every chance to waive his right and refuse the …proceeds." *Boyd, 638 F.3d* at 143; *see also Matchiner v. Harford Life & Accident Insurance Co*., 622 F.3d 885, 888 (8th Cir. 2010)(noting that while the plan at issue did not set forth any formal procedures for waiver, the "plan documents and not the divorce decree are controlling"). As the Fourth Circuit noted in *Boyd*, it is the plan administrator's role to follow the Plan documents in distributing benefits and the enforcement─ the interpretation of personal divorce decrees and separation agreements are ultimately not matters for the plan administrator's concern.  *Id.* at 145.  This Court cannot grant Setzer's request to reject the Plan's clear terms and

"unwind *Kennedy* and make a puzzle of plan administration," where "Congress has provided an alternative that is simultaneously clearer and more sensible." *Boyd*, 636 F.3d at 145.

Thus, this Court concludes that in making its decision, the Appeals Board followed the language, purpose and goals of the Plan in light of the procedural and substantive requirements of ERISA and controlling law.

### 2.     The Appeals Board's Review of Setzer's Benefit Claim.

The Court set forth above the relevant facts concerning Setzer's claim and the Appeals Board's review of the same. ERISA requires that a Plan "afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim." 29 U.S.C. § 1133. "Procedural guidelines are at the foundation of ERISA and 'full and fair review must be construed ... to protect a plan participant from arbitrary or unprincipled decision-making.'" *Gagliano v. Reliance Standard Life Ins. Co.*, 547 F.3d 230, 235 (4th Cir.2008)(internal citation omitted). The regulations setting forth the procedural requirements for a "full and fair review" of an ERISA claim require a "review that takes into account all comments, documents, records, and other information submitted by the claimant relating to the claim" and a notification that gives "[t]he specific reason or reasons for the adverse determination." 29 C.F.R. § 2560.503–1(h) & (j). A denial of benefits will be considered reasonable and will not be overturned under the abuse of discretion standard if the decision " 'is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence.' " *Evans v. Eaton Corp. Long Term Disability Plan*, 514 F.3d 315, 322 (4th Cir.2008) (quoting *Bernstein v. CapitalCare, Inc.*, 70 F.3d 783, 788 (4th Cir.1995)).

The record reflects that the Appeals Board's undertook a full and fair review of Setzer's appeal and considered all available information. (A.R. 7-10.) Setzer was fully informed of the reasons for the Appeals Board's actions, his rights to appeal the determinations made, and the right to participate and present information supporting his request. (A.R. 4, 16-27, 22.)

To the extent Setzer asks this Court to remand this case to the Appeals Board to allow him another opportunity to participate and present his position concerning Jessica's refusal of benefits, this request is denied. Firstly, Setzer was previously afforded an opportunity to fully participate and present his arguments before the Board and declined to do so. (A.R. 10, 16-17.) Secondly, the applicable law and the Plan oppose Setzer's position and further consideration of Jessica's purported rejection of the benefits would not change the Appeals Board's decision. Accordingly, this Court concludes that the Appeals Board exercised a reasonable and principled decision-making process that was consistent with the governing language of the Plan. Setzer has not shown that the Appeals Board's decision was unreasonable, an abuse of discretion, or otherwise influenced by any conflict. Indeed, the Appeals Board decision is entirely in accord with the Plan terms and the applicable law.

## CONCLUSION

Based upon the foregoing, it is the opinion of the Court that the Appeals Board did not abuse its discretion in denying Setzer's claim for benefits. Accordingly, the Michelin Retirement Plan is entitled to judgment in its favor. Setzer's claims are hereby dismissed with prejudice.

IT IS SO ORDERED.

s/Mary G. Lewis
MARY G. LEWIS
UNITED STATES DISTRICT JUDGE

April 14, 2015
Columbia, South Carolina